# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| GRACIE McCAULEY and WILLIAM McCAULEY b/n/f KIM McCAULEY and KEVIN McCAULEY, and KIM and KEVIN McCAULEY, Individually, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) NO. 2:06-CV-412 |
| LAKE COUNTY DEPARTMENT OF CHILD SERVICES, INDIANA DEPARTMENT OF CHILD SERVICES, STATE OF INDIANA, MUNSTER MEDICAL RESEARCH FOUNDATION d/b/a COMMUNITY HOSPITAL, MELANIE COX, and JASON BOUCHARD, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

After Kim McCauley gave birth at Munster Community Hospital, the Hospital performed a routine drug screen on her newborn son. When the lab report revealed positive results for narcotic drugs, the Hospital notified the Department of Child Services of possible child abuse. Child Services then removed the baby and his older sister from Kim and her husband's custody. As it turns out, the Hospital's lab results were wrong. The McCauleys now claim that the Hospital was negligent in reporting unconfirmed positive test results to Child Services. They also claim that the Hospital failed to take corrective actions once it found out the initial test results were wrong. The Hospital has moved for summary judgment. [DE 50]. For the reasons that follow, the Hospital's motion is granted in part and denied in part.

# I. BACKGROUND

On October 5, 2005, Kim gave birth to William McCauley at Munster Community Hospital. (DE 32, Am. Compl. ¶ 2.) After William was born, the Hospital performed routine drug tests on William, and its lab report indicated a positive result for certain narcotic drugs. (DE 50-5 at 30.) The Hospital reviewed Kim's medical records and determined that Kim had a prescription for antidepressants that accounted for some, but not all, of the drugs. (*Id.* at 27.) The Hospital then notified the Lake County Department of Child Services of possible child abuse based on the test results. (DE 32, ¶¶ 4, 8.) On October 11, 2005, Child Services removed William and his older sister Grace from the custody of their parents. (*Id.* ¶ 6.)

After the children were taken away, the Hospital received several lab reports prepared by outside labs showing that the Hospital's initial test results were wrong. (DE 51 at 3-4.) According to the Hospital, the first results arrived on October 11, the second results on October 13, and the third on October 19. (*Id.*) The McCauleys do not appear to dispute these dates, but contend that the Hospital knew the initial test results were wrong as early as October 11 – the day the children were removed by Child Services. (DE 64 at 3-4.) In any event, the Hospital did not send the exonerating test results to Child Services until October 19, 2005, two days after Child Services made a request for them. (DE 50-10.) The parties have not indicated, nor is it clear from the record, when the children were returned home.

On November 13, 2006, the McCauleys filed this action in Lake County Superior Court against the Hospital and state agencies and officials. The state defendants removed this case to federal court. (DE 2.) The McCauleys allege that the Hospital was negligent in administering the drug test, in reporting possible child abuse based on faulty test results, and in failing to correct its misdiagnosis. The McCauleys simultaneously filed a proposed medical malpractice complaint against the Hospital with the Indiana Department of Insurance based on the same factual

allegations. (DE 13-2.) On March 5, 2007, the Court stayed the negligence claims against the Hospital pending initial review by a medical review panel as required by the Indiana Medical Malpractice Act, IND. CODE § 34-18-1-1, *et seq*. (DE 16.) The Hospital has meanwhile moved for summary judgment based on a preliminary determination of law. (DE 50.) The medical review panel has been stayed pending the outcome of the instant motion. (DE 71.)

## II. DISCUSSION

As mentioned, there are essentially three claims being brought against the Hospital – first, for its alleged negligence in administering the initial drug screen; second, for reporting the faulty results; and third, for its failure to correct the error once it found out that the results were actually negative for drugs. The Hospital seeks summary judgment on the latter two claims.

In Indiana, a malpractice action filed in court may not proceed until after a medical review panel has reviewed the proposed complaint and rendered an opinion. IND. CODE § 34-18-8-4. As a result, the McCauleys' malpractice claims against the Hospital have been stayed while the proposed complaint is now pending before the Indiana Department of Insurance. But Indiana law does permit trial courts to make preliminary determinations on affirmative defenses or issues of law or fact, even before the medical review panel has completed its work. IND. CODE §§ 34-18-8-7; 34-18-11-1. By asserting the affirmative defense of immunity at this stage in the proceedings, that is what the Hospital seeks to do in its present motion for summary judgment.[1]

---

[1] In *Jones v. Griffith*, 870 F.2d 1363 (7th Cir. 1989), the Seventh Circuit held that federal district courts lack jurisdiction to make such preliminary determinations. *Id.* at 1366-67. In that case, the parties asked the district court to decide issues of law that would not resolve the legal claims, but would be applied by the medical review panel in their analysis. *Id.* at 1364-65. The the Seventh Circuit construed this as a request for an advisory opinion and further found that the case had not ripened to a justiciable case or controversy because the medical review panel had not yet convened. *Id.* at 1366-67. I do not find that *Griffith* applies to the instant case. First, since the *Griffith* decision, the Malpractice Act has been amended to allow malpractice claims to

3

A motion for summary judgment should be granted if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute about a material fact exists if the evidence is such that a reasonable jury could find in favor of the nonmoving party. *Id.* In making this determination, I must construe all facts and draw all inferences in the light most favorable to the nonmoving party. *McCoy v. Maytag Corp.*, 495 F.3d 515, 520 (7th Cir. 2007).

The Hospital says it is immune from liability for any claim relating to the Hospital's initial report to Child Services or its alleged failure to correct that report when it became aware of its misdiagnosis. The Hospital relies on an Indiana child abuse reporting statute that requires an individual who has reason to believe that a child is a victim of abuse or neglect to report the possible abuse to Child Services or local law enforcement. IND. CODE § 31-33-5-1, 31-33-5-4. Under Indiana law, failure to make such a report may result in criminal misdemeanor charges. *Id.* § 31-33-22-1. Conversely, anyone who makes a child abuse report in good faith is immune from civil and criminal liability. *Id.* § 31-33-6-1. The reporting person's good faith is presumed as a matter of law. *Id.* §§ 31-33-6-2; 31-33-6-3. So immunity is only destroyed if the plaintiff can demonstrate that the report was made maliciously or in bad faith. *See Aylward v. Bamberg*, 182 F.3d 921 (Table), 1999 WL 515203 at *5-6 (7th Cir. 1999).

The McCauleys do not allege outright that the Hospital made its initial report to Child Services maliciously or in bad faith. But they suggest the same by asserting that the Hospital

---

commence in state court, for such limited purposes as making preliminary determinations of law, while claims are still pending before the medical review panel. IND. CODE § 34-18-8-4. Second, unlike *Griffith*, the Hospital in this case is asking me to decide an affirmative defense that will resolve claims against it, rather than issuing a advisory opinion with no effect. Therefore, the Hospital's motion is ripe for review.

4

reported the initial positive test results before those results were confirmed. The fact that the Hospital reported possible child abuse right away does not support an inference of bad faith. Instead, it suggests the opposite – that the Hospital had a good faith (albeit, mistaken) belief that baby William was in immediate danger. There is no evidence in the record to rebut the presumption of good faith afforded to the Hospital. Therefore, the claim for negligent reporting of child abuse must be dismissed on immunity grounds.

The second claim is a horse of a different color. The Hospital argues that since it is immune from any claims that it negligently made the first report to child services, it is therefore immune from any subsequent acts which would not have occurred but for that report. In essence, the Hospital wants me to extend statutory immunity to a situation where someone reports information of child abuse but later finds out the information is wrong and does nothing about it. The Hospital has not supplied, and I am unaware of, any authority that supports the Hospital's interpretation. As a federal judge presiding over state law claims, I must refrain from extending state law and decide state law issues as I believe the Indiana Supreme Court would. *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996). The Indiana legislature has expressed the following purposes for the child abuse reporting statute: to encourage effective reporting of possible child abuse or neglect; to promote prompt investigations of child abuse reports; and to protect abused and neglected children from further harm. IND. CODE § 31-33-1-1. In order to achieve these goals, the legislature has provided qualified immunity for reporters of child abuse. *Kinder v. Doe*, 540 N.E.2d 111, 114 (Ind. App. Ct. 1989). But it does not logically follow that extending immunity to persons who make erroneous reports, and fail to correct them, promotes the legislative aims of the reporting statute. Instead, it would likely frustrate those policy goals. False reports of child abuse cause emotional and financial difficulties for parents who are wrongly accused and waste the time

and resources of the welfare agencies. *See Kinder*, 540 N.E.2d at 111. Therefore, I do not think the Indiana Supreme Court would extend immunity to this type of situation. Accordingly, I reject the Hospital's affirmative defense as to the McCauleys' claim that the Hospital failed to correct its erroneous report to Child Services.

Since immunity does not apply to this latter claim, I must consider whether a reasonable jury could find that the Hospital negligently failed to correct its misdiagnosis. In Indiana, the tort of negligence consists of three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach. *Foddrill v. Crane*, 894 N.E.2d 1070, 1075 (Ind. App. Ct. 2008).

As to the first element, the Hospital contends it had no legal duty to inform Child Services that the initial test results were wrong. Whether a duty exists is a question of law for the Court to decide. *Bowman ex rel. Bowman v. McNary*, 853 N.E.2d 984, 990 (Ind. App. Ct. 2006). I am unaware of an Indiana statute or case articulating a duty to correct a misdiagnosis under these of circumstances. The McCauleys contend such a duty is so obvious that there is no need to cite to legal authority. As stated earlier, in the absence of controlling authority, I must decide the issue as I believe the Indiana Supreme Court would. *Burchler*, 88 F.3d at 521. In cases where the existence of a duty is not previously established, Indiana courts "will generally find a duty where reasonable persons would recognize and agree it exists." *Estate of Heck ex rel. Heck v. Stoffer*, 786 N.E.2d 265, 268 (Ind. 2003). This analysis involves a balancing of the following three factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the plaintiff; and (3) public policy concerns. *Id.*

All three factors weigh heavily in favor of imposing a duty on the hospital under these circumstances. First, the relationship between a healthcare provider and a patient is special

because a patient relies heavily on the expertise of the healthcare provider to make decisions that may greatly impact the patient's health and well-being. *See Cox v. Paul*, 828 N.E.2d 907, 913 (Ind. 2005). Hospitals therefore owe a duty of reasonable care to their patients and may be liable for the negligent acts of their employees. *Volger v. Dominguez*, 624 N.E.2d 56, 62 (Ind. App. Ct. 1993). Second, the foreseeability component of duty requires a "general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Williams v. Cingular Wireless*, 809 N.E.2d 473, 477 (Ind. App. Ct. 2004). It is generally recognized that a healthcare provider's failure to disclose health-related information can cause injury. *See, e.g., Auler v. Van Natta*, 686 N.E.2d 172, 174 (Ind. App. Ct. 1997) (holding failure to disclose risks of surgery could result in surgery without informed consent); *Bader v. Johnson*, 732 N.E.2d 1212, 1219 (finding failure to disclose severe congenital birth defects during pregnancy could cause harm to parents). Similarly, it is reasonably foreseeable that the Hospital's failure to disclose the exonerating test results could have prevented the removal of the McCauley children or resulted in their return sooner. Third, there is strong public policy in favor of parental rights regarding their children. *See In re A.I.*, 825 N.E.2d 798, 804-05 (Ind. Ct. App. 2005). Therefore, I am convinced that the Indiana Supreme Court would find that the Hospital had a duty to correct its initial misdiagnosis.

The second element of a negligence claim, breach of a duty, is a factual question which requires an evaluation of the Hospital's conduct with respect to the requisite standard of care. *See Patterson v. Seavoy*, 822 N.E.2d 206, 213 (Ind. App. Ct. 2005). The standard of care in a negligence action is reasonable care; the conduct required to measure up to that standard depends on the circumstances. *Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 515 (Ind. App. Ct. 2005). The Hospital says there was no breach here because it disclosed the negative test results

7

on October 19, 2005. It is unclear in the record when the Hospital knew that the initial test results were wrong. But under the McCauley's version of the facts – which I accept as true at this phase of the case – the Hospital knew this fact on October 11, 2005, more than a week before it sent the results to Child Services.

The Hospital argues that, even if it wanted to disclose the negative test results to Child Services, it was prohibited from doing so because of federal patient privacy regulations. This argument is ridiculous. First, federal regulations permit healthcare providers to disclose health information to persons acting *in loco parentis*. 45 C.F.R. § 164.502(g)(3). And even if the Hospital was reluctant to disclose health information to Child Services, nothing prevented the Hospital from disclosing the lab results to the *parents* sooner than October 19. Under the circumstances, a reasonable jury could find that the Hospital's delay in correcting its initial misdiagnosis fell below the standard of reasonable care. Therefore, I find there is a genuine issue of material fact regarding breach.

The third element, proximate causation, involves two inquiries for the jury to decide. The first is whether there is causation-in-fact, *i.e.*, whether the injury would have occurred but for the defendant's negligence. *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243-44 (Ind. 2003). The Hospital says there is no causation-in-fact because the children were removed from the parents' custody before the Hospital was aware of the negative test results. It therefore contends that the injury would have occurred whether or not the Hospital was negligent in correcting its mistake. That may be true but it overlooks the real issue here: whether the Hospital's failure to correct its misdiagnosis sooner *delayed* the return of the children. A reasonable jury could find that the children would have returned home earlier but for the Hospital's delay. The second factual inquiry is whether the plaintiff's injury was reasonably foreseeable as

the natural and probable consequence of the act or omission. *Smith & Wesson*, 801 N.E.2d at 1243-44. The Hospital admits that the removal of the McCauley children was a result of its initial report to Child Services. (DE 68 at 6.) The record also suggests that Child Services relied on the Hospital's diagnoses in the child protection proceedings. (DE 65-7.) A reasonable juror could therefore also conclude that the prolonged removal of the children should have been foreseen or anticipated by the Hospital.

### III. CONCLUSION

For the foregoing reasons, the Hospital's Motion for Preliminary Determination of Summary Judgment [DE 50] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claim that the Hospital was negligent in reporting possible child abuse is **DISMISSED**. Summary judgment on Plaintiffs' claim that the Hospital negligently failed to correct its erroneous report is **DENIED**.

**SO ORDERED.**

ENTERED: December 19, 2008

    s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT